UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Tobaccoville USA, Inc., ) | Civil Action No.: 4:16-cv-00424-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| United States Department of the Treasury, ) | |
| Alcohol and Tobacco Tax and Trade ) | |
| Bureau; John Manfreda, Administrator, *in* ) | |
| *his official capacity*; and Jacob J. Lew, ) | |
| Secretary of the Treasury, *in his* ) | |
| *official capacity*, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on Defendants' motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). *See* ECF No. 26. The Court grants Defendants' motion for the reasons set forth below.

## **Background**

The factual and procedural history of this case and the underlying administrative proceeding are fully set forth in this Court's March 9, 2016 order. *See* ECF No. 25, *available at* 2016 WL 892661. In brief, Tobaccoville USA, Inc. ("Tobaccoville") holds a tobacco products importer permit issued by the Alcohol and Tobacco Tax and Trade Bureau ("TTB").[1] Due to new regulations issued by TTB, Tobaccoville had to reapply for a permit.[2] TTB issued a notice of contemplated disapproval of

---

[1] TTB is a federal bureau under the United States Department of the Treasury and is "responsible for enforcing the laws regulating alcohol production, importation, and wholesale businesses; tobacco manufacturing and importing businesses; and alcohol labeling and advertising." TTB's Responsibilities—What We Do, http://www.ttb.gov/consumer/responsibilities.shtml.

[2] *See* 27 C.F.R. §§ 41.201(b), 41.202(b) (requiring all tobacco import permit holders with a permit issued before August 26, 2013, to reapply).

Tobaccoville's permit application, and Tobaccoville contested the contemplated disapproval by requesting a hearing before an administrative law judge. Despite the ongoing administrative proceeding, Tobaccoville has filed the instant action in this Court against TTB and two individual defendants[3] (collectively, "Defendants") seeking declaratory and injunctive relief.[4] Defendants have now filed a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 26. Tobaccoville has filed a response in opposition (with exhibits), and Defendants have filed a reply. *See* ECF Nos. 27 & 28.

## Discussion

Defendants move to dismiss Tobaccoville's claims pursuant to both Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted), arguing Tobaccoville has failed to exhaust its administrative remedies.[5] "There is some uncertainty as to whether a failure to exhaust administrative remedies is properly brought in a Rule 12(b)(1) motion, as a jurisdictional defect, or in a Rule 12(b)(6) motion for failure to state a

---

[3] Defendant John Manfreda is the Administrator of TTB, and Defendant Jacob J. Lew is the Secretary of the Treasury. ECF No. 7 at ¶¶ 11-12.

[4] Tobaccoville filed its original complaint on February 10, 2016, and filed an amended complaint on February 24, 2016. *See* ECF Nos. 1 & 7. On February 25, 2016, Tobaccoville filed a motion for a temporary restraining order, preliminary injunction, or stay, which the Court denied on February 29, 2016. *See* ECF Nos. 8, 16, 25. As the Court noted in its order, Defendants filed a response to Tobaccoville's motion in which it "**confirmed that the plaintiff will maintain its permit throughout the administrative and any judicial review of its application**. The plaintiff thus will be able to remain in business while it makes it[s] case – including any challenges to the discovery rulings – in the administrative proceeding and, if necessary, in judicial review of the final administrative action." ECF No. 15 at 2.

[5] Defendants also argue Tobaccoville lacks standing to bring its claims now because it suffers no current harm or imminent threat of future harm to justify the declaratory and injunctive relief it seeks. ECF No. 26 at 1; ECF No. 26-1 at 1, 5-7. Because the Court grants Defendants' motion on exhaustion grounds, the Court need not reach Defendants' standing argument.

claim."[6] *Temples v. U.S. Postal Serv.*, No. 3:12-cv-00034-JFA-SVH, 2012 WL 1952655, at *2 (D.S.C. May 8, 2012), *adopted by*, 2012 WL 1952299 (D.S.C. May 30, 2012). Notably, the United States Court of Appeals for the Fourth Circuit "has characterized exhaustion as a jurisdictional requirement" that is "more properly addressed under Rule 12(b)(1), instead of Rule 12(b)(6)." *Agolli v. Office Depot, Inc.*, 548 F. App'x 871, 875 (4th Cir. 2013) (citing *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013)). Moreover, Rule 12(b)(1) would appear to be the more appropriate vehicle, given that Tobaccoville has submitted various exhibits in support of its response in opposition to Defendants' motion to dismiss. *See* ECF Nos. 27-1 through 27-8; *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 506 (4th Cir. 2015) ("When a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."); *Melendez v. Sebelius*, 611 F. App'x 762, 763 (4th Cir. 2015) ("Where a challenge under Rule 12(b)(1) is raised to the asserted basis for subject matter jurisdiction, the burden of proving the asserted basis for jurisdiction falls on the plaintiff."). In any event, Tobaccoville's case must be

---

[6] "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks omitted). The plaintiff bears the burden to prove subject matter jurisdiction exists, and the court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

When deciding a motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6), the district court must accept all well-pled facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). A complaint must state a "'plausible claim for relief'" to survive a 12(b)(6) motion to dismiss. *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The court will not dismiss the plaintiff's complaint so long as he provides adequate detail about his claims to show he has a "more-than-conceivable chance of success on the merits." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 (4th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006)). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. A complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

dismissed because it has not exhausted its administrative remedies.

"It is a 'long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Cavalier Tel., LLC. v. Virginia Elec. & Power Co.*, 303 F.3d 316, 322 (4th Cir. 2002) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51 (1938)). "In other words, '[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed.'" *Id.* (alteration in original) (quoting *Reiter v. Cooper*, 507 U.S. 258, 269 (1993)). "The exhaustion requirement serves many purposes, not the least of which are to allow an agency the opportunity to use its discretion and expertise to resolve a dispute without premature judicial intervention and to allow the courts to have benefit of an agency's talents through a fully developed administrative record." *Thetford Properties IV Ltd. P'ship v. U.S. Dep't of Hous. & Urban Dev.*, 907 F.2d 445, 448 (4th Cir. 1990) (internal citation omitted).

Exhaustion is required where Congress explicitly mandates it. *Cavalier*, 303 F.3d at 322. "Even where the statutory requirement of exhaustion is not explicit, courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme." *Id.* "Thus, every exhaustion inquiry begins with a look at congressional intent and the relevant statutory scheme." *Barnes v. Int'l Amateur Athletic Fed'n*, 862 F. Supp. 1537, 1542 (S.D.W. Va. 1993).

TTB's administrative regulations provide for three levels of administrative review, as summarized in Defendants' motion to dismiss. *See* ECF No. 26-1 at 3 (citing 27 C.F.R. §§ 71.78, 71.107, 71.116). First, an administrative law judge ("ALJ") conducts a hearing on the permit application and recommends a decision to the TTB Officer. 27 C.F.R. § 71.78. The Officer then makes

an initial decision on whether the permit should be issued; if the Officer concludes the permit should be issued, the application is approved. *Id.* § 71.107. However, if the Officer contemplates disapproval, the Officer serves the ALJ's recommendation on the applicant, informs the applicant of the contemplated disapproval, and affords the applicant the ability to submit proposed findings and conclusions or exceptions to the recommendation. *Id.* The Officer then reviews the applicant's submission and makes the initial decision. *Id.* If the Officer does not approve the application, the applicant may appeal to the TTB Administrator, who makes the final decision.[7] *Id.* § 71.116. Significantly, the regulations provide that "[a]n appeal to the Administrator is ***required*** prior to application to the Federal courts for review." *Id.* § 71.115 (emphasis added).

At the time Defendants filed their motion to dismiss (April 18, 2016), an ALJ had already conducted a hearing on March 2 and 3, 2016, and was in the process of recommending a decision to the TTB Officer.[8] *See* ECF No. 26-1 at 3. Defendants noted that even assuming the ALJ proposed adverse action on Tobaccoville's permit application, Tobaccoville still had to proceed through two more levels of administrative review—via the Officer and the Administrator—before it could seek judicial review

---

[7]     The Administrator must afford the applicant an opportunity to submit "proposed findings, conclusions or exceptions with reasons in support thereof and an opportunity for oral argument." 27 C.F.R. § 71.116. The Administrator "may alter or modify any finding of the administrative law judge (or of the appropriate TTB officer in application proceedings) and may affirm, reverse, or modify the decision of the administrative law judge (or of the appropriate TTB officer in initial application proceedings), or he may remand the case for further hearing." *Id.*

[8]     On January 13, 2017, this Court issued an order directing the parties to file a joint status report advising the Court of the progress and status of the underlying administrative proceedings. *See* ECF No. 30. The parties filed the joint status report on January 18, 2017. *See* ECF No. 32. The joint status report specifies that (1) the ALJ issued a decision on December 15, 2016, recommending disapproval of Tobaccoville's application; (2) the ALJ's recommended decision was transmitted to the designated TTB Officer (the Director of the National Revenue Center), who contemplates disapproval of the application; (3) Tobaccoville has until January 23, 2017, to submit proposed findings of fact and conclusions of law, or exceptions, to the ALJ's recommended decision; (4) Tobaccoville intends to submit such proposed findings of fact/conclusions of law and exceptions; (5) if the TTB Officer does not approve the application, Tobaccoville may appeal to the TTB Administrator; and (6) "Tobaccoville may seek civil recourse upon exhaustion of the applicable administrative process." *Id.* at 1-2.

5

by this Court.  *Id.* at 4.

In its response to Defendants' motion to dismiss, Tobaccoville does not dispute that administrative proceedings are ongoing.  *See* ECF No. 27.  However, Tobaccoville argues:

> This case meets a well-recognized exception to the general rule that a district court should dismiss litigation prior to a final administrative decision in a regulatory matter. . . .
>
> The Constitutional issues presented in this case are such that Tobaccoville's interest in prompt access to judicial review, under normal judicial process, outweighs the government's interest in efficiency or administrative autonomy.  Furthermore, the actions of TTB below clearly indicate that the TTB pre-determined its denial of Tobaccoville's import permit, rather than conducting an impartial investigation and review.

*Id.* at 1.  Tobaccoville justifies these arguments by citing *McCarthy v. Madigan*, 503 U.S. 140 (1992), wherein the United States Supreme Court extensively discussed the general principles of exhaustion and limited exceptions thereto.  *See* 503 U.S. at 144-49.  The Supreme Court stated, "[A]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further."  *Id.* at 146.  The Supreme Court then outlined "three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion"; those circumstances include: (1) when requiring exhaustion may unduly prejudice subsequent court action; (2) when an agency's remedy may be inadequate; and (3) "**where the administrative body is shown to be biased or has otherwise predetermined the issue before it.**"  *Id.* at 146-48 (emphasis added).  Tobaccoville relies on the third of these circumstances, arguing "TTB ***pre-determined*** its denial of Tobaccoville's import permit, rather than conducting an impartial investigation and review."  ECF No. 27 at 1-2 (emphasis added).

To support its predetermination argument, Tobaccoville has submitted excerpts from the administrative record, including testimony from the administrative hearing that occurred before the ALJ on March 2 and 3, 2016.[9] *See* ECF Nos. 27-1 through 27-8. Tobaccoville argues this evidence shows that TTB engaged in "an excessive and deliberate attempt to revoke, cause surrender of, or deny Tobaccoville a tobacco importer permit on any grounds"; and that TTB "did not actually conduct an investigation of Tobaccoville's permit application, did not apply the very standards which it had represented would be applied to permit applications, but instead simply walked through a sham process to reach a foregone conclusion." ECF No. 27 at 2, 4.

Specifically, Tobaccoville argues the evidence shows TTB began its investigation in 2009 knowing there were no regulations in place limiting the duration of Tobaccoville's permit, and that TTB nonetheless attempted to persuade Tobaccoville to surrender its permit. ECF No. 27 at 2 (citing ECF Nos. 27-1 & 27-2). Tobaccoville further contends that after two of its officers entered felony *Alford*[10] pleas in 2011, TTB initiated another investigation and issued a rule to show cause why Tobaccoville's permit should not be revoked under a recently enacted statute.[11] *Id.* at 2-3 (citing ECF Nos. 27-3 & 27-4). Tobaccoville points out that, during the pendency of the revocation proceedings, TTB promulgated an emergency temporary regulation requiring all tobacco import permit holders with a permit issued

---

[9] Tobaccoville also refers to its filings in support of its prior motion for a temporary restraining order, preliminary injunction, or stay. *See* ECF Nos. 8 & 13.

[10] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (recognizing a defendant may voluntarily and knowingly consent to a criminal penalty even if he is unwilling or unable to admit participation in the acts constituting the crime).

[11] On February 4, 2009, Congress amended portions of the statutes relating to permits for the importation of tobacco; the amendments allow TTB to deny or revoke a permit—after notice and the opportunity for a hearing—if the permit holder (or in the case of a corporation, one of its principals) is convicted of a tobacco-related felony under state or federal law. *See* 26 U.S.C. §§ 5712(3)(B), 5713(b)(1). These statutes do not specify whether they are retroactive.

before August 26, 2013, to reapply.[12]  *Id.* at 3 (citing ECF Nos. 27-5 & 27-6).  Finally, Tobaccoville asserts TTB searched for another way to prevent Tobaccoville from importing by sending a Notice of Contemplated Disapproval that alleged underpayment of certain excise taxes and completely ignored the mandatory statutory procedure for assessing and collecting unpaid excise taxes.  *Id.* at 3-4 (citing ECF No. 27-7 & 27-8).

The Court finds Tobaccoville has failed to make a sufficient showing that TTB was biased or predetermined the issue of Tobaccoville's permit application such that administrative exhaustion is not required.  *See McCarthy*, 503 U.S. at 148.  It is clear Tobaccoville believes TTB intentionally targeted it by promulgating post hoc regulations that required it to reapply for a permit, and by arbitrarily disregarding tax collection procedures.  However, the evidence submitted by Tobaccoville does not support a conclusion that Tobaccoville cannot present its concerns in the three-step administrative review process afforded by TTB.  *See* 27 C.F.R. §§ 71.78, 71.107, 71.116.  If anything, the evidence itself illustrates how Tobaccoville *was* able to elicit testimony pertaining to those concerns at the March 2016 hearing before the ALJ; notably, seven of the eight exhibits attached to Tobaccoville's response are taken from evidence (live testimony and an exhibit) presented at that hearing.  *See* ECF Nos. 27-1, 27-2, 27-3, 27-4, 27-5, 27-7, & 27-8.  Moreover, even though the ALJ recently issued an unfavorable decision recommending disapproval of Tobaccoville's permit application,[13] Tobaccoville still has two levels of administrative review available via the TTB Officer and the TTB Administrator.  *See* 27 C.F.R. §§ 71.107, 71.116; *McCarthy*, 503 U.S. at 145 ("The exhaustion doctrine . . . acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its

---

[12]     *See* 27 C.F.R. §§ 41.201(b), 41.202(b) (effective August 26, 2013).

[13]     *See supra* footnote 8.

own mistakes with respect to the programs it administers before it is haled into federal court. . . . [E]ven where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context."). Tobaccoville has not presented sufficient evidence suggesting the result has been predetermined at *any* of the three exhaustion levels of administrative review. *See Thetford Properties*, 907 F.2d at 450 ("Absent a clear showing that an administrative agency has taken a hard and fast position that makes an adverse ruling a certainty, a litigant's prognostication that he is likely to fail before an agency is not a sufficient reason to excuse the lack of exhaustion.").

Most significantly, the regulations for TTB's administrative review process provide that "[a]n appeal to the Administrator is ***required*** prior to application to the Federal courts for review." 27 C.F.R. § 71.115 (emphasis added). This regulation alone is arguably sufficient reason for administrative exhaustion to be a prerequisite for judicial review in this Court. *See Sims v. Apfel*, 530 U.S. 103, 108 (2000) ("[I]t is common for an agency's regulations to require issue exhaustion in administrative appeals. And when regulations do so, courts reviewing agency action regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues." (internal citations omitted)).

As noted above, Tobaccoville argues, "The Constitutional issues presented in this case are such that Tobaccoville's interest in prompt access to judicial review, under normal judicial process, outweighs the government's interest in efficiency or administrative autonomy." ECF No. 27 at 1. Tobaccoville further contends exhaustion is not required because TTB's actions violate Tobaccoville's due process and equal protection rights, as well as the takings clause. *Id.* at 4. However, the Fourth Circuit has squarely "reject[ed] the argument that, as a general rule, exhaustion is not necessary where administrative litigants raise constitutional challenges." *Thetford Properties*, 907 F.2d at 448.

Furthermore, the Court recognizes the exceptions to the exhaustion requirement—including predetermination—apply only in the "rare" and "extreme" case when "an agency has taken a clearly unconstitutional position." *Id.* The instant case does not meet these criteria, and "the constitutional focus of Tobaccoville['s] claim does not relieve [it] of [its] obligation to pursue and exhaust [its] remedies before" TTB. *Id.* at 449.

The Court must address one final matter. In its response, Tobaccoville states it "does not ask the Court to prevent the conclusion of the administrative process at this time, but, rather simply to stay this action instead of dismissing it, so that Tobaccoville's Constitutional rights with respect to the litigation, including its right to a full record development, may be within this Court's purview upon completion of the administrative process."[14] ECF No. 27 at 2. However, as explained above, constitutional challenges are no exception to the exhaustion requirement. *See Thetford Properties*, 907 F.2d at 448 ("[E]xhaustion is particularly appropriate when the administrative remedy may eliminate the necessity of deciding constitutional questions. This principle is nothing more than a necessary corollary to the fundamental rule of judicial restraint that a court ought not to pass on questions of constitutionality unless such adjudication is unavoidable." (internal citations and quotation marks

---

[14] In requesting a stay, Tobaccoville cites two district court cases—*Borough of Ellwood City v. Pennsylvania Power Co.*, 462 F. Supp. 1343 (W.D. Pa. 1979), and *Eastern Air Lines, Inc. v. Mobile Oil Corp.*, 403 F. Supp. 757 (S.D. Fla. 1975)—in which the courts stayed the federal action pending administrative decisions. Both cases involved application of the primary jurisdiction doctrine, which "is a doctrine which allows the district court to avail itself of agency expertise, and to avoid, as much as possible, the disruption of the administrative regime." 462 F. Supp. 1343 at 1350. In *Pennsylvania Power*, an antitrust case, the district court found a stay was appropriate so that the Federal Energy Regulatory Commission could evaluate the reasonableness of retail electricity rates that allegedly created a price squeeze. *Id.* at 1350-52. In *Eastern Air Lines*, the district court concluded a stay was proper so that the Federal Energy Administration could answer highly complex and technical questions concerning the pricing of crude oil acquisitions governed by administrative regulations. 403 F. Supp. at 758-59.

Both *Pennsylvania Power* and *Eastern Air Lines* are factually and legally distinguishable from the instant case. Moreover, neither case has been relied upon or otherwise cited by the United States Court of Appeals for the Fourth Circuit or any district court in this circuit. The Court finds a stay is not warranted based on either *Pennsylvania Power* or *Eastern Air Lines.*

omitted)). If TTB ultimately grants Tobaccoville's permit application, such administrative action may very well result in a satisfactory end to the matter without requiring this Court to adjudicate Tobaccoville's constitutional claims. *See id.* at 447-48 (affirming the district court's dismissal for failure to exhaust and explaining "requiring exhaustion here may very well lead to a satisfactory resolution of this controversy without having to reach appellants' constitutional challenge.").[15] The Court sees no reason why this case should remain open while Tobaccoville is litigating its claims at the various levels of TTB administrative review.[16] Accordingly, the Court finds a stay is not warranted and will instead dismiss this action without prejudice to Tobaccoville's right to refile after exhausting administrative remedies.

### Conclusion

The Court has thoroughly reviewed the entire record, the parties' arguments, and the applicable law. Having done so, the Court finds Tobaccoville has not shown TTB was biased or predetermined the issue of Tobaccoville's permit application such that administrative exhaustion is not required. *See McCarthy*, 503 U.S. at 148. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss [ECF No. 26] and **DISMISSES** this action *without prejudice*.

**IT IS SO ORDERED.**

---

[15] Even if Tobaccoville and Defendants cannot resolve this dispute, exhaustion will still have served critical purposes, including the benefits of a fully developed administrative record and an agency's interpretation and application of recently enacted statutes and regulations. *Cf. Thetford Properties*, 907 F.2d at 448 ("Even if HUD and appellants cannot resolve this dispute, exhaustion will still have served vital purposes. Aside from the readily apparent benefits of a fully developed administrative record, the reviewing court will also have the considerable benefit of the agency's interpretation of the Act as applied to appellants' plans of action.").

[16] Tobaccoville itself seeks "a full record development," ECF No. 27 at 2, which is yet another reason to close this civil case. *See Thetford Properties*, 907 F.2d at at 448 ("The exhaustion requirement serves many purposes, not the least of which [is] . . . to allow the courts to have benefit of an agency's talents *through a fully developed administrative record*." (internal citation omitted) (emphasis added)).

Florence, South Carolina                                    s/ R. Bryan Harwell
January 19, 2017                                            R. Bryan Harwell
                                                            United States District Judge